UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 15

MOBY S.P.A.,                                    Case No. 22-10311

Debtor in a Foreign Proceeding.
_____/


**VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN
PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF
<u>PURSUANT TO BANKRUPTCY CODE SECTIONS 1515, 1517, 1520 AND 1521</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

JURISDICTION AND VENUE ..........................................................................................3

BACKGROUND ....................................................................................................................3

    A.    Business Activities...............................................................................................3

    B.    Capital Structure .................................................................................................5

THE ITALIAN INSOLVENCY PROCEEDING .............................................................6

    A.    The Foreign Representative .............................................................................7

    B.    Property Located In The United States...........................................................7

RELIEF REQUESTED..........................................................................................................8

BASIS FOR RELIEF .............................................................................................................9

    A.    The Italian Insolvency Proceeding Should Be Recognized As A Foreign Main Proceeding ...............................................................................................10

    B.    The Petitioner Is A Foreign Representative Who Is A Person .............................13

    C.    The Verified Petition Meets The Requirements Of Section 1515 ........................14

    D.    Moby Is Entitled To Automatic Relief Under Section 1520 ................................16

    E.    Discretionary Relief Under Section 1521 Should Also Be Granted....................17

    F.    Likelihood of Success on the Merits.................................................................18

    G.    Likelihood of Irreparable Injury If Injunction Is Not Granted ..........................18

    H.    Threatened Injury to Moby Outweighs Any Damage to Third Parties................18

    I.    Injunction Will Serve Public Interest...............................................................19

    J.    Granting Relief Is Proper As Interests of Creditors And Other Interested Parties Are Sufficiently Protected....................................................................19

    K.    No Waiver Of Foreign Representative's Immunity.............................................20

PRAYER FOR RELIEF ......................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*,
  773 F.2d 452 (2d Cir. 1985)..................................................................... 19

*In re ABC Learning Ctrs. Ltd.*,
  445 B.R. 318 (Bankr. D. Del. 2010) *aff'd*, 728 F.3d 301 (3d Cir. 2013)................................. 11

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (S.D.N.Y. 2012)................................................................... 16

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007)........................................................... 13

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) ........................................................... 11

*In re British Am. Ins. Co.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010) ......................................................... 11

*In re British Am. Isle of Venice (BVI), Ltd.*,
  441 B.R. 713 (Bankr. S.D. Fla. 2010) ..................................................... 12, 16

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
  2010 WL 10063842 (S.D.N.Y. Nov. 8, 2010)...................................................... 15

*In re Crystallex Int'l Corp.*,
  No. 11-14074, ECF 20 (Bankr. D. Del. Dec. 28, 2011) ........................................... 19

*In re Energy Coal S.p.A.*,
  582 B.R. 619 (Bankr. D. Del. 2018) ........................................................ 14, 16

*In re Garcia Avila*,
  296 B.R. 95 (Bankr. S.D.N.Y. 2003)............................................................. 18

*In re Inversora Electrica de Buenos Aires S.A.*,
  560 B.R. 650 (Bankr. S.D.N.Y. 2016)............................................................. 9

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015)........................................................... 12, 14

*In re Oversight & Control Comm'n of Avánzit, S.A.*, |385 B.R. 525 (Bankr. S.D.N.Y.
  2008) ......................................................................................... 9

*In re Petroforte Brasileiro de Petroleo Ltda.*,
  Case No. 1:14-bk-15408, ECF 7 (Bankr. S.D. Fla. Mar. 7, 2014) ................................. 10

*In re Pro-Fit Holdings Ltd.*,
  391 B.R. 850 (Bankr. C.D. Cal. 2008)........................................................... 18

*In re Rizzo Bottiglieri-de Carlini Armatori S.p.A.*,
  Case No. 15-bk-32041, ECF 4 (Bankr. S.D. Tex. Apr. 13, 2015)............................. 12, 14, 16

*In re SPhinX, Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) .......................... 13

*In re Vitro, S.A.B. de C.V.*,
  470 B.R. 408 (N.D. Tex.), *aff'd sub nom. In re Vitro S.A.B. de CV*, 701 F.3d 1031 (5th
  Cir. 2012) ........................................................................................................................... 15, 17

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
  618 F. App'x 31 (2d Cir. 2015) ...................................................................................................... 18

*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*,
  768 F.3d 239 (2d Cir. 2014) ........................................................................................................... 17

### Statutes

11 U.S.C. § 101(23) ............................................................................................................................ 10

11 U.S.C. § 101(24) ............................................................................................................................ 14

11 U.S.C. § 101(41) ............................................................................................................................ 14

11 U.S.C. § 1502(4) ............................................................................................................................ 12

11 U.S.C. § 1506 ................................................................................................................................. 16

11 U.S.C. § 1508 ................................................................................................................................... 9

11 U.S.C. § 1515(a) ............................................................................................................................ 15

11 U.S.C. § 1516(c) ............................................................................................................................ 13

11 U.S.C. § 1517(a)(2) ........................................................................................................................ 14

11 U.S.C. § 1517(a)(3) ........................................................................................................................ 15

11 U.S.C. § 1517(b)(1) ........................................................................................................................ 12

11 U.S.C. § 1520(a) ............................................................................................................................ 17

11 U.S.C. § 1521(e) ............................................................................................................................ 17

11 U.S.C. § 1522(a) ............................................................................................................................ 20

11 U.S.C. § 1525(a) ............................................................................................................................ 20

### Other Authorities

Collier on Bankruptcy ¶ 304.05, at 304–21 (15th ed. Rev. 2003) ................................................. 19

Achille Onorato, in his capacity as Foreign Representative (the "Foreign Representative") of Moby S.p.A. ("Moby"), which is the subject of an Italian insolvency proceeding pending before the *Tribunale di Milano, Sezione II Civile, Fallimentare* (the "Italian Bankruptcy Court") under matter number 48/2020 R.G. C.P. (the "Italian Insolvency Proceeding"), hereby files this verified petition and motion for related relief (the "Verified Petition") for entry of an order: (a) recognizing the Italian Insolvency Proceeding as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (b) confirming relief pursuant to Bankruptcy Code section 1520; and (c) granting further relief pursuant to Bankruptcy Code sections 105(a), 1507(a), and 1521. This Verified Petition refers to Chapter 15 of the Bankruptcy Code (11 U.S.C. §§ 1501–1532) as "Chapter 15" and to the proceeding resulting from this Verified Petition as this "Chapter 15 Proceeding."

In support of this Verified Petition, the Petitioner files simultaneously herein and incorporates by reference (a) his declaration as the Foreign Representative of Moby (the "Onorato Declaration" or "Onorato Decl."); and (b) the declaration of Luca Jeantet, Esq., an attorney advising Moby in the Italian Insolvency Proceeding (the "Jeantet Declaration" or "Jeantet Decl.").

## INTRODUCTION

1. The Foreign Representative commences this Chapter 15 Proceeding for two principal reasons. The first is to obtain this Court's recognition of the Italian Insolvency Proceeding as a foreign main proceeding. Recognition will (a) stay potential legal actions against Moby and its assets within the territorial jurisdiction of the United States, preserving the *status quo* so that creditors and other parties in interest cannot seize property or litigate outside of the Italian Insolvency Proceeding; (b) ensure the enforceability and effectiveness in the United States of the Italian Insolvency Proceeding; and (c) provide critical assistance to the

Foreign Representative in maximizing the value of assets in the Italian Insolvency Proceeding. The second reason is to ensure that no creditors can bypass the collective proceedings and effect of the Italian Insolvency Proceeding by taking actions to thwart the collective action and ongoing compromise efforts.

2.    Moby and its group of companies ("Moby Group") are successful Italian ferry and cruise operators maintaining routes in both the Mediterranean and Baltic Seas.

3.    Despite its success, in the recent years, Moby Group's profitability decreased due to:  (a) an increased competition; (b) expenses associated with Moby Group's expansion in the Mediterranean and Baltic Seas; and (c) increased costs, including for fuel and other port-related expenses.   In late 2019/early 2020, Moby became the target of an involuntary bankruptcy proceeding in Italy.   The Italian Bankruptcy Court dismissed the involuntary proceeding because Moby, despite its financial difficulties, was a solvent company.

4.    In early 2020, the Moby Group's financial situation deteriorated because of the effect the COVID-19 pandemic had on its cruise and ferry businesses, resulting in a stiff decrease of ticket sale revenues.   Between late 2019 and the first half of 2020, Moby negotiated a potential debt restructuring with certain creditors of the Moby Group, including those that had filed the involuntary bankruptcy petition in Italy.

5.    Despite the progress of creditor discussions, certain creditors continued to threaten Moby Group's business continuity.   Thus, on June 30, 2020, Moby and its main subsidiary Compagnia Italiana di Navigazione S.p.A. ("CIN," and together with Moby, the "Italian Debtors") filed two separate applications for judicial restructuring pursuant to article 161, sixth paragraph, of Royal Decree No. 267/1942 (the "Italian Bankruptcy Law") (the "Application[s]").   Consequently, from July 1, 2020 onwards, any acts by Moby and CIN's

creditors to start or continue enforcement and foreclosure proceedings over Moby and CIN's assets have been automatically "stayed." Such "stay" will remain in force as long as Moby and CIN's respective insolvency proceedings are pending.

6.    The Italian Bankruptcy Court accepted the Italian Debtors' Applications on July 9, 2020, authorizing the Italian Debtors to potentially reach an agreement with their creditors under the Italian Bankruptcy Court's supervision. On March 29, 2021, Moby filed its proposal for an agreement with creditors with the Italian Bankruptcy Court. CIN did so on May 24, 2021.

7.    On June 24, 2021, the Italian Bankruptcy Court authorized Moby to proceed to the next stages of judicial restructuring.

8.    In order to allow for an expeditious and effective commercial restructuring in the Italian Insolvency Proceeding, including enforcing all rights and obligations under the Indenture and other agreements, Moby now seeks the protections afforded by Chapter 15.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334(a) and (b), and 11 U.S.C. § 1501. Venue is proper in this district pursuant to 28 U.S.C. § 1410(a)(1) and (3). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Foreign Representative consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A.    Business Activities

10.    The Moby Group started as a ferry business, focusing on the transport of passengers and freight in the Mediterranean Sea, where it connects mainland Italy with

Mediterranean islands (including Sardinia, Sicily and Malta).  The Italian national and regional governments provide the Moby Group with subsidies (totaling approximately €87 million per year) to operate certain routes considered to be in the public interest throughout the year and, in particular, during the low season (i.e., from October to March when there are fewer tourists using the ferries than in spring and summer).

11.     In 2017, the Moby Group expanded its ferry business to the Baltic Sea, where it launched cruises with ports of call in Russia (St. Petersburg), Estonia (Tallinn), Sweden (Stockholm), and Finland (Helsinki).  The Moby Group's fleet—composed of 48 vessels and 16 tugboats—is one of the most modern and largest fleets in Europe.  Prior to the COVID-19 pandemic, vessels belonging to the Moby Group were valued at approximately €1 billion.  The Moby Group also (a) fully manages the port of Olbia in Sardinia; and (b) provides other limited port services (e.g., passenger ticketing) in several other Italian cities, such as Livorno (on the coast of Tuscany) and Catania (the second largest city in Sicily).

12.     The Moby Group has enjoyed an exceptional reputation in the maritime industry.  For instance, in 2016 and 2017, the Moby Group won the "Italian Travel Awards" (a leading tourism award) for the quality of the daily service offered on board its ferries.  Similarly, in 2018, the German Quality & Finance Institution praised Moby, as it had done four previous times, for offering its customers the best service among ferry carriers.  In January 2019, Moby became a member of the exclusive "Club of Superbrands," which includes companies that have generated significant innovation in their respective business sectors.

13.     Moby's Board of Directors has five members, including Achille Onorato, who is  Moby's Vice Chairman and Chief Executive Officer ("CEO").

## B.    Capital Structure

14.    In February 2016, in order to extinguish prior debt of approximately €429.2 million, the Moby Group sought and obtained €560 million in financing through a combination of a credit facility and a bond issuance.  First, Moby obtained (a) a €200 million loan requiring annual payments ("Term Loan") from a consortium of eight U.S. and non-U.S. banks (the "Lenders"),[1] and (b) a €60 million revolving credit facility from five of the Lenders,[2] to be fully repaid by 2021 ("Revolving Facility").  Both the Term Loan and the Revolving Facility are governed by the terms of the Senior Facilities Agreement (the "Credit Facility.").  The Credit Facility is governed by English law, and the courts of England have exclusive jurisdiction over disputes related to it.[3]  Pursuant to Section 9.1 of the Credit Facility, the Term Loan must be repaid, in five annual installments, by February 2021 ("Installment[s]").[4]

15.    During the same time period, Onorato Armatori S.p.A. ("Onorato Armatori")—which later would merge into Moby—issued bonds in accordance with an indenture ("Indenture") in the amount of €300 million.[5]  The bonds bear interest of 7.75% per year payable in two semi-annual payments in February and August, mature in February 2023 and

---

[1]    The Lenders were as follows:  (a) UniCredit S.p.A. ("UniCredit"); (b) JP Morgan Securities PLC ("JP Morgan Securities"); (c) Goldman Sachs International ("GSI"); (d) Banca IMI S.p.A. ("Banca IMI"); (e) Banca Popolare di Milano S.c. a r.l. ("BPM"); (f) Monte dei Paschi di Siena S.p.A. ("Monte dei Paschi"); (g) Unione di Banche Italiane S.p.A. ("UBI"); and (h) Banco Popolare Società Cooperativa ("Banco Popolare").

[2]    In total, (a) UniCredit agreed to fund Moby and related entities with €65 million; (b) Banca IMI with €65 million; (c) BPM with €50 million; (d) Monte dei Paschi with €39 million; (e) UBI with €15 million; (f) Banco Popolare with €15 million; (g) JP Morgan Securities with €5.5 million; and (h) GSI with €5.5 million.

[3]    *See* Sections 45 and 46.1 of the Senior Facilities Agreement.

[4]    Each Installment is due in February of each of the five years between 2017 and 2021, with the schedule of payments as follows:  (a) €10 million due in the first year (February 2017); (b) €40 million due in the second year (February 2018); (c) €50 million due in the third year (February 2019); (d) €50 million due in the fourth year (February 2020); and (e) €50 million due in the fifth year (February 2021).  *See* Section 9.1(a) of the Credit Facilities Agreement.

[5]    Section 4.20 of the Indenture required the merger of the Onorato Armatori, S.p.A. into Moby as described in the Offering Memorandum within 180 days of the issue date for the Bonds.

trade on the Luxembourg Stock Exchange (the "Bonds").  The Indenture designates the state and federal courts of Manhattan as having non-exclusive jurisdiction of disputes arising under the Indenture. Under the terms of the Indenture, Moby designated an agent in New York, NY.

16.    The Bonds and the Credit Facility are secured by a collateral package, including (a) mortgages over vessels belonging to the Moby Group; and (b) pledges over the Moby Group's shares and certain of their bank accounts ("Collateral").

## THE ITALIAN INSOLVENCY PROCEEDING

17.    On June 30, 2020, the Italian Debtors filed Applications for judicial restructuring before the Italian Bankruptcy Court, seeking a voluntary judicial restructuring. Onorato Decl. ¶ 26, Ex. 2.

18.    The Italian Debtors' voluntary judicial restructuring—termed a "*concordato preventivo*"—is a court-supervised procedure by which a debtor in financial difficulties like Moby seeks to avoid bankruptcy or liquidation by reaching an agreement with its creditors. Such agreement with creditors is based on (a) a proposal made by the debtor to his creditors regarding the repayment of its indebtedness (the "Concordato Proposal"); and (b) a related plan in which the debtor details how debt would be restructured or discharged (the "Concordato Plan").  The Concordato Proposal and related Concordato Plan are initially filed with the competent Italian bankruptcy court.  Onorato Decl. ¶ 28.

19.    Upon filing of the Applications, Moby and CIN's creditors have been automatically stayed from July 1, 2020 for as long as their respective insolvency proceedings are pending.  Onorato Decl. ¶ 27.

20.    On July 9, 2020, the Italian Bankruptcy Court accepted Moby and CIN's Applications, authorizing each of them to file its respective Concordato Proposal and Concordato Plan.  Onorato Decl. ¶ 29, Ex. 2.

21.     On March 29, 2021, Moby filed its Concordato Proposal and related Concordato Plan with the Italian Bankruptcy Court. CIN's filing occurred on May 24, 2021. Onorato Decl. ¶ 30.

22.     On June 24, 2021, the Italian Bankruptcy Court entered an order admitting Moby to the *concordato preventivo*, authorizing Moby to proceed to the next stages of the *concordato preventivo* as set forth in the Italian Bankruptcy Law. Onorato Decl. ¶ 31, Ex. 3.

### A.     The Foreign Representative

23.     Achille Onorato, an Italian citizen who is the Petitioner and Foreign Representative, serves as Moby's CEO. Onorato Decl. ¶ 3. Mr. Onorato has worked for Moby since September 2009, and has been a Vice Chairman of the Board of Directors since July 2015 and CEO since April 2016. Onorato Decl. ¶ 3.

24.     On August 30, 2021, Moby granted Mr. Onorato authority to represent Moby as its Foreign Representative in connection with a Chapter 15 Proceeding in the United States. Onorato Decl. ¶ 4, Ex. 1.

### B.     Property Located In The United States

25.     While most of Moby's property is located in and around the Mediterranean and the Baltic Seas, the Indenture represents a contract binding Moby and the bondholders, with a U.S.-based Trustee, and designating New York as the governing law and the venue for any proceedings arising out of its terms. Onorato Decl. ¶¶ 19-20, 34.

26.     The below list summarizes Moby's key United States contracts:

a.     The Indenture;

b.     Numerous other collaboration and supply contracts.

Onorato Decl. ¶ 35.

27.    Moby has also paid a cash retainer to Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") in connection with this case, and maintains an interest in the unearned portion of these retainer funds, which are maintained in a U.S. bank account at City National Bank, Miami, Florida.  Onorato Decl. ¶ 36.

## RELIEF REQUESTED

28.    The Petitioner respectfully requests that this Court enter an order, substantially in the form of the proposed order attached hereto as Appendix A (the "Proposed Order"), pursuant to sections 105(a), 1507(a), 1515, 1517, 1520, 1521(a) and 1521(b) of the Bankruptcy Code that:

   a.  recognizes the Italian Insolvency Proceeding as a foreign main proceeding (as defined in section 1502 of the Bankruptcy Code) and grants Moby all of the relief afforded to such proceedings pursuant to section 1520 of the Bankruptcy Code and grants Moby all of the relief requested herein pursuant to section 1521 of the Bankruptcy Code;

   b.  recognizes the Petitioner as a "Foreign Representative" as defined in section 101(24) of the Bankruptcy Code;

   c.  entrusts the administration, realization and distribution of any and all of Moby's assets within the territorial jurisdiction of the United States to the Petitioner, pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code;

   d.  to the extent not already provided in 11 U.S.C. § 1520, enjoins all creditors and other persons from (a) disposing or otherwise taking any action against any property of Moby; and (b) taking or continuing any act to obtain possession of, or exercise control over, such property;

   e.  to the extent not already provided in 11 U.S.C. § 1520, enjoins the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the Italian Insolvency Proceeding or any orders issued by the Italian Bankruptcy Court identified in the Verified Petition, or the Italian law relating thereto;

   f.  provides that no action taken by the Petitioner in preparing, disseminating, applying for, implementing or otherwise in connection with any Italian Bankruptcy Court order, any order entered in respect of the Verified Petition, this Chapter 15 Proceeding, any further order for additional relief in this

Chapter 15 Proceeding, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code;

g.   provides for the examination of witnesses, the taking of evidence or the delivery of information concerning the Debtor's assets, affairs, rights, obligations or liabilities pursuant to sections 1519(a)(3) and 1521(a)(4) of the Bankruptcy Code;

h.   provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and

i.   provides related relief and such other and further relief as the Court deems proper and just (together with the relief requested in sub-paragraphs (a) through (h), the "Relief Requested").

## **BASIS FOR RELIEF**

29.   The Relief Requested is based on the provisions of Chapter 15 of the Bankruptcy Code.  As directed by the statute, in interpreting Chapter 15, a court is to "consider its international origin, and the need to promote an application of [Chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions."  11 U.S.C. § 1508.

30.   Section 1517(a) provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (a) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code; (b) the foreign representative applying for recognition is a person or body; and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See, e.g.*, *In re Inversora Electrica de Buenos Aires S.A.*, 560 B.R. 650, 653–54 (Bankr. S.D.N.Y. 2016); *In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008); *In re Petroforte Brasileiro de Petroleo Ltda.*, Case No. 1:14-bk-15408, ECF 7 (Bankr. S.D. Fla. Mar. 7, 2014) (granting recognition of foreign proceeding under section 1517(a)).

A.      **The Italian Insolvency Proceeding Should Be Recognized As A Foreign Main Proceeding**

31.      The Italian Insolvency Proceeding is a "foreign proceeding" as that term is defined in section 101(23) of the Bankruptcy Code.  Bankruptcy Code section 101(23) defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

32.      Here, there is no dispute that the Italian Insolvency Proceeding is an insolvency proceeding brought under the Italian Bankruptcy Law, which provides a statutory means for applicants thereunder to reorganize their financial affairs subject to the supervision of a court. Jeantet Decl. ¶ 18-25.  Specifically, approval of the Italian Bankruptcy Court is necessary for a Concordato Proposal accepted by creditors to become effective, and the Italian Bankruptcy Court will retain jurisdiction to enforce the terms of the Concordato Proposal.  *Id.* ¶ 24.

33.      Moby's Italian Insolvency Proceeding is pending in a foreign country (Italy) under a law relating to insolvency, *see id.* ¶¶ 9, 15, pursuant to which the assets and affairs of a debtor are subject to the control and supervision of the Italian Bankruptcy Court.  *See id.* ¶¶ 19, 20, 23.  Indeed, the Italian Bankruptcy Law has many features in common with or similar to the Bankruptcy Code, such as the debtor remaining in possession, a policy favoring rehabilitation over liquidation, a mechanism for binding dissenting creditors, and a general policy of equal treatment of creditors.  *Id.* ¶¶ 10, 18-25.

34.      Moreover, in order to protect debtors and their creditors from particular creditors foreclosing on the debtor's assets to the detriment of the others, the Italian Bankruptcy Law also provides for a general stay (similar to the Bankruptcy Code's automatic

stay), by which the Italian Bankruptcy Court orders the temporary suspension of enforcement proceedings against the debtor, putting an end to the "race to the courthouse" in order to allow for the plan negotiation process to progress constructively. *See id.* ¶ 17, 20.

35.     Further, the Italian Insolvency Proceeding is "collective" in nature because it is comprehensive as to all of the debtor company's assets and creditors. *See In re British Am. Ins. Co*., 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010) ("A proceeding is collective if it considers the rights and obligations of all creditors."), *aff'd*, 728 F.3d 301 (3d Cir. 2013); Jeantet Decl. ¶ 24, 25. Courts addressing whether a proceeding is "collective" look to such proceeding's consideration of creditors in general.    In contrast, non-collective proceedings, such as foreclosure proceedings, for example, are instituted to protect the rights of a single, secured creditor. *See In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009); *ABC Learning Ctrs.*, 445 B.R. at 334–35 (using the term "all creditors" to mean creditors in general).    Thus, provided that a proceeding "contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action," it is "collective" in nature. *British Am. Ins.*, 425 B.R. at 902; s*ee In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 717–18 (Bankr. S.D. Fla. 2010) (holding that proceeding was collective in nature where all creditors had right to be heard).

36.     In general, the Italian Insolvency Proceeding aims to ensure fair treatment of the broad array of creditors and stakeholders by, among others things,  (a) staying proceedings so that individual creditors may not obtain an advantage over similarly situated creditors; (b) preventing the debtors from making preferential payments to creditors; and (c) providing procedures for voting to accept or reject a reorganization plan.  Jeantet Decl. ¶¶ 8, 19, 24.

37.     Courts in the United States have repeatedly held that Italian insolvency proceedings are "foreign proceedings" within the meaning of the Bankruptcy Code. *See, e.g., In re Energy Coal S.p.A.*, 582 B.R. 619 (Bankr. D. Del. 2018); *In re Rizzo Bottiglieri-de Carlini Armatori S.p.A.*, Case No. 15-bk-32041, ECF 4 (Bankr. S.D. Tex. Apr. 13, 2015). Accordingly, Moby's Italian Insolvency Proceeding qualifies as a "foreign proceeding" under the Bankruptcy Code.

38.     Beyond qualifying as a "foreign proceeding" under section 101(23), the Italian Insolvency Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests").

39.     First, the Italian Bankruptcy Court has already found that the Italian Insolvency Proceeding is a "foreign main" proceeding.[6]  Although the term "center of main interests" (or "COMI") is not defined in the Bankruptcy Code, a debtor's COMI is presumed to be located at its registered office. *See* 11 U.S.C. § 1516(c).  The Italian Bankruptcy Court has also determined that Moby's registered office is in Milan, Italy.[7]

40.     In addition to the location of the debtor's registered office, courts in this district have identified five non-exhaustive factors in determining a debtor's COMI:

---

[6]      "This is a main proceeding pursuant to Article 3, paragraph 1, EU Regulation 848 of 2015." Commencement Order at 1.

[7]      "Pursuant to Articles 3 and 4 of EU Regulation 848 of 2015, the jurisdiction and competence of this Court exists since the COMI of the company is located in Italy, since the registered office of the company is located in Milan, and there are no elements to locate a possible different office."  Commencement Order at 1.

a.  the location of those who actually manage the debtor (which may be the headquarters of a holding company);

b.  the location of the debtor's headquarters;

c.  the location of the debtor's primary assets;

d.  the location of the majority of the debtor's creditors or the majority of the creditors affected by the case; and

e.  the jurisdiction whose law would apply to most disputes.

*See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007).

41.  Moby's registered office is in Italy and nearly all of its corporate business is conducted and directed from Italy. *See* Section I. Specifically, (a) Moby is a company organized under the laws of Italy with its headquarters, registered office and principal place of business in Italy; (b) Moby's senior management, including, but not limited to, the CEO, the Chief Financial Officer, and the Chief Legal Officer, is based in Italy; (c) Moby houses most of its cash management and accounting functions in Italy; (d) the vast majority of Moby's employees are residents of and work in Italy; and (e) the majority of Moby's assets—its maritime vessels—sail in Italy or operate internationally in the Mediterranean and Baltic Seas. Onorato Decl. ¶ 15.

42.  For all of the foregoing reasons, the Italian Insolvency Proceeding is, and should be recognized as, a foreign main proceeding.

**B.    The Petitioner Is A Foreign Representative Who Is A Person**

43.  The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a "person or body." 11 U.S.C. § 1517(a)(2).

44.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  Under section 101(41), the "term 'person' includes [an] individual."  11 U.S.C. § 101(41).

45.     The Petitioner is an individual who has been authorized and appointed by Moby to serve as its Foreign Representative.  *See supra* Section II.  Thus, Mr. Onorato satisfies the second requirement for entry of an order recognizing the Italian Insolvency Proceeding as a foreign main proceeding.  *See In re Energy Coal S.p.A.*, 582 B.R. 619, 622 (Bankr. D. Del. 2018) (recognizing the foreign representative designated by the company's board under the *concordata preventivo*); *In re Rizzo Bottiglieri-de Carlini Armatori S.p.A.*, Case No. 15-bk-32041, ECF 4 (Bankr. S.D. Tex. Apr. 13, 2015) (same); *see In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) (recognizing as foreign representative of a Brazilian company an individual appointed by the company's board); *In re Compania Mexicana de Aviacion, S.A. de C.V.*,  2010 WL 10063842 (S.D.N.Y. Nov. 8, 2010) (recognizing as foreign representative of a Mexican airline an individual appointed and authorized by the company's board of directors); *In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 413 (N.D. Tex.), *aff'd sub nom. In re Vitro S.A.B. de CV*, 701 F.3d 1031 (5th Cir. 2012) (holding that possible foreign representatives of a Mexican company include individuals appointed by the company's board of directors).

## C.     The Verified Petition Meets The Requirements Of Section 1515

46.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).

Bankruptcy Code section 1515 provides that a foreign representative "applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition." 11 U.S.C. § 1515(a).

47.    Here, all of the requirements of section 1515 of the Bankruptcy Code have been met. First, this Chapter 15 Proceeding was commenced by the Petitioner through the filing of the Verified Petition as required by section 1515(a) of the Bankruptcy Code.

48.    Second, evidence of the existence of the Italian Insolvency Proceeding and of the appointment of the Petitioner as the Foreign Representative have been provided to the Court as required under sections 1515(b)(1) and (d) of the Bankruptcy Code.

49.    Third, in accordance with section 1515(c) of the Bankruptcy Code, Mr. Onorato has filed a statement identifying the Italian Insolvency Proceeding as the only foreign proceeding currently pending with respect to Moby.

50.    Fourth, the introductory language of section 1517 of the Bankruptcy Code refers to section 1506, which grants the Court discretion to deny relief if it would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Here, the relief requested by the Foreign Representative is not manifestly contrary to, but rather is consistent with, United States public policy, which courts have construed very narrowly. *See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 139 n. 60 (S.D.N.Y. 2012) (explaining that courts have "uniformly" interpreted the public policy exception "narrowly and applied it sparingly"); *British Am. Isle of Venice*, 441 B.R. at 717 (same).

51.    The public policy exception contained in section 1506 has no application here, and numerous courts have already held that Italy's insolvency regime does not violate public policy. *See, e.g., In re Energy Coal S.p.A.*, 582 B.R. at 622 (recognizing, as a foreign main

proceeding, a case filed pursuant to the *concordato preventivo* under Italian Bankruptcy Law); *In re Rizzo Bottiglieri-de Carlini Armatori S.p.A.*, Case No. 15-bk-32041, ECF 4 (Bankr. S.D. Tex. Apr. 13, 2015) (same, and stating that granting relief is "consistent with the public policy of the United States").  Petitioner is aware of no chapter 15 cases where a United States bankruptcy court failed to find that a *concordato preventivo* commenced under the Italian Bankruptcy Law was a "foreign proceeding" or denied recognition of any such proceeding under chapter 15.

52.    Recognizing the Italian Insolvency Proceeding and enjoining certain actions or proceedings with respect to Moby and its assets here in the United States will assist the orderly administration of Moby's assets and implementation of the restructuring provided in Italy. Such orderly administration is demonstrably consistent with the public policy of the United States, as embodied in the Bankruptcy Code.

53.    Accordingly, each of the requirements of section 1517(a) has been satisfied, and entry of an order recognizing the Italian Insolvency Proceeding as a foreign main proceeding is proper.

### D.    Moby Is Entitled To Automatic Relief Under Section 1520

54.    Section 1520(a) of the Bankruptcy Code sets forth statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, *see* 11 U.S.C. § 1520(a), including the application of the automatic stay under section 362(a) of the Bankruptcy Code, which prohibits any act to exercise or obtain possession or control over, or to commence or continue any action against, the debtor and its property within the territorial jurisdiction of the United States that could have been commenced prior to the commencement of this case.  Thus, once the Court recognizes a foreign main proceeding, no further showing is required to obtain such protections.  *See Krys v. Farnum Place, LLC (In re Fairfield Sentry*

*Ltd.*), 768 F.3d 239, 245–46 (2d Cir. 2014) (holding that section 1520 applies automatically upon granting of foreign main recognition).

### E.    Discretionary Relief Under Section 1521 Should Also Be Granted

55.    To ensure the enforceability in the United States of any orders issued by the Italian Bankruptcy Court and to maximize the assets of Moby, relief under section 1521 is appropriate.  Specifically, the Foreign Representative respectfully requests that this Court exercise its power under section 1521 (and section 1507) to grant the relief described in Paragraph 28 above.

56.    The standard for issuance of relief under sections 1521(a) of the Bankruptcy Code is the same as is required for an injunction.  *See* 11 U.S.C. § 1521(e).  However, the Foreign Representative need not file an adversary proceeding to obtain the relief sought.  *In re Vitro, S.A.B. de C.V.*, 455 B.R. at 579 ("Thus, protections afforded under §§ 362 and 105 are available to Vitro SAB prior to recognition of the foreign main proceeding."); *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 862 (Bankr. C.D. Cal. 2008) ("[T]he relief sought here, the application of § 362 on a provisional basis, does not require an adversary proceeding.").

57.    Accordingly, the following factors applicable to the issuance of an injunction apply to the Verified Petition:  (a) a likelihood of success on the merits; (b) a likelihood that the movant will suffer irreparable injury if the injunction is not issued; (c) that the threatened injury to the movant outweighs any damage the injunction might cause the opponent; and (d) that the injunction will not disserve the public interest.  *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015).  The Foreign Representative contends that these four factors are easily met.

F.      **Likelihood of Success on the Merits**

58.     The Italian Insolvency Proceeding should be recognized.  The Italian Insolvency Proceeding is clearly a "foreign proceeding" under Chapter 15, and Moby's COMI is clearly Italy.  There is no serious question that the Foreign Representative is entitled to and will succeed in obtaining relief under section 1521 of the Bankruptcy Code and the application of the provisions of section 1521 at that time.

G.      **Likelihood of Irreparable Injury If Injunction Is Not Granted**

59.     If foreign main recognition is not granted, there is undoubtedly a substantial threat of irreparable harm to Moby if injunctive relief under section 1521 is not granted. Specifically, injunctive relief consistent with the automatic stay will simply aid the stay already imposed by the Italian Bankruptcy Law and allow for an investigation to aid in preserving and recovering property in the United States.

60.     It is well established that irreparable harm to a debtor's estate is present where local actions are not enjoined and can disrupt a foreign proceeding.  *See, e.g., In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("[I]rreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum.") (quoting Collier on Bankruptcy ¶ 304.05, at 304–21 (15th ed. rev. 2003)).  The Foreign Representative submits that the second prong of the injunctive relief standard is therefore satisfied under these circumstances.

H.      **Threatened Injury to Moby Outweighs Any Damage to Third Parties**

61.     The relief requested herein will benefit Moby by ensuring an equitable and orderly implementation of the Italian Insolvency Proceeding process and maximization of creditor distributions therein.  *See, e.g., In re Crystallex Int'l Corp.*, No. 11-14074, ECF 20 (Bankr. D. Del. Dec. 28, 2011) (stating that failing to issue a provisional stay against creditors

in a chapter 15 case could "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Debtor's creditors"). Leaving Moby's assets and restructuring effort exposed to attack could lead to a piecemeal distribution of its assets and hinder its ability to conduct operations, a reality that outweighs any perceived harm to any other party. Accordingly, the threatened injury to Moby that would result if relief is not granted under section 1521 clearly outweighs any damage third parties could suffer as a result of such relief.

### I.    Injunction Will Serve Public Interest

62.    The relief requested under section 1521 will not disserve the public interest; on the contrary, granting such relief is in the public interest as it will facilitate a cross-border reorganization that will provide a benefit to Moby's creditors. *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

### J.    Granting Relief Is Proper As Interests of Creditors And Other Interested Parties Are Sufficiently Protected

63.    The relief requested under section 1521 is founded on the Congressional mandate to cooperate with foreign proceedings and the foreign representative's goal to promote the goals of Chapter 15. *See* 11 U.S.C. § 1525(a) ("Consistent with section 1501 the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee."). Such relief is appropriate, under section 1521, because it is necessary to ensure the success of the Italian Insolvency Proceeding. The Court may grant such relief, however, "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

64.     The interests of any creditors and all other interested parties are sufficiently protected by the treatment afforded to them in the Proposed Order.  Accordingly, the Court may grant relief under section 1521 because the interests of creditors and other interest entities are sufficiently protected in the Italian Insolvency Proceeding.

### K.     No Waiver Of Foreign Representative's Immunity

65.     The order granting this Verified Petition should provide that no action taken by the Petitioner in preparing, disseminating, applying for, implementing or otherwise in connection with the Verified Petition, this Chapter 15 Proceeding, any further order for additional relief in this Chapter 15 Proceeding, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as Foreign Representative under section 1510 of the Bankruptcy Code.

### <u>PRAYER FOR RELIEF</u>

The Foreign Representative respectfully requests entry of an order in the form of the Proposed Order filed contemporaneously herewith, thereby recognizing the Italian Insolvency Proceeding as a foreign main proceeding and granting the other relief requested herein and all such other relief, at law or in equity, to which the Foreign Representative is justly entitled.

Respectfully submitted this 14th day of January, 2022.

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Patricia B. Tomasco
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone:  713-221-7000
Facsimile:  713-221-7100
Email: pattytomasco@quinnemanuel.com

By:  /s/  *Patricia B. Tomasco*
        Patricia B. Tomasco

Juan P. Morillo (FBN 135933)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone:  202-538-8000
Facsimile:  202-538-8100
Email: juanmorillo@quinnemanuel.com

**COUNSEL FOR ACHILLE ONORATO,
FOREIGN REPRESENTATIVE**

## <u>VERIFICATION OF PETITION</u>

I, Achille Onorato, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

I am the Chief Executive Officer of Moby S.p.A. and the authorized foreign representative for the Debtors.  As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtors.

I have read the foregoing Verified Petition and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14th, 2022.                    /s/  Achille Onorato___
                                                   Title:  Chief Executive Officer
                                                   Moby S.p.A.